In re Stuart PERSKY, Debtor.

In re Bernard PERSKY, Debtor.

COMMUNITY NATIONAL BANK
AND TRUST COMPANY OF
NEW YORK, Plaintiff,

v.

Stuart and Ronni PERSKY, Defendants.

COMMUNITY NATIONAL BANK
AND TRUST COMPANY OF
NEW YORK, Plaintiff,

v.

Bernard and Shirley PERSKY,
Defendants.

Bankruptcy Nos. 185–51219–
352, 185–51446–352.
Adv. Nos. 186–0067, 186–0066.

United States Bankruptcy Court,
E.D. New York.

Dec. 3, 1991.

Corash, Hollender & Wilkens, Staten Island, N.Y. by Paul Hollender, for plaintiff.

Ballon, Stoll & Itzler, New York City by Harvey L. Woll, for defendants.

Marilyn Frier, Woodmere, N.Y., trustee.

**DECISION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINTS UNDER FED.R.CIV.P. 12(b)(6) AND FED.R.BANKR.P. 7012(b)**

MARVIN A. HOLLAND, Bankruptcy Judge:

This is the second of defendants' motions to dismiss complaints that seek a sale of real property pursuant to section 363(h) of the Bankruptcy Code (Title 11 U.S.C.). The court grants the defendants' motion and dismisses the complaint.

*Facts and Prior Proceedings*

The defendants' first motion to dismiss was granted on September 2, 1987. 78 B.R. 657. The District Court affirmed, 108 B.R. 418, and the Court of Appeals reversed and remanded for further findings. 893 F.2d 15. The relevant facts are set forth in the cited decisions and we will assume familiarity with them. By way of brief summary, however, in each of these two separate related cases the trustee proceeded pursuant to 11 U.S.C. § 363(b)(1) by giving notice pursuant to 11 U.S.C. § 102(1)(B) of a sale of only the estates' interests in entireties property in which the estate had acquired the interest of only the debtor spouse. The plaintiff-creditor brought an adversary proceeding seeking to compel the trustee to sell the said interests of both the estate and the non-debtor spouse pursuant to section 363(h) of the Bankruptcy Code. The defendants' original motion to dismiss the complaints was granted on three grounds:

(i) That pursuant to CPLR § 5240, the defendants' possessory rights are exempt from process under section 522(b)(2)(B) of the Bankruptcy Code.

(ii) That the benefit to the estate of a sale of the non-debtor spouse's right of survivorship is outweighed by the detriment to a family forced to move from its long-term home.

(iii) That the debtors' interests in the entireties are not an "undivided interests" and therefore are not subject to section 363(h).

The Court of Appeals reversed and remanded holding that:

(a) CPLR § 5240 is a remedial tool which creates no substantive exemption for any property interest owned by the debtor, and therefore under New York law, a debtor's interest in an entireties property is not exempt from process.

(b) A hearing was necessary to determine the benefit to the estate and detriment to the non-debtor spouses which might result from a section 363(h) sale.

In light of the remand, the Court of Appeals declined to address the constitutional issues.

On remand, but prior to the remand hearing, the defendants moved to dismiss the complaint on the third ground set forth in this court's original decision: that the defendants' entireties interests are not amenable to sales under section 363(h) for the reason that entireties interests are not "undivided interests."

The plaintiff's answer argued that since the Court of Appeals had been presented with this point and had not considered it, they had therefore rejected it by implication and this court cannot now consider a new motion to dismiss on those grounds.

Since neither the Court of Appeals nor this court had addressed either the constitutionality of applying section 363(h) to the non-debtor spouses in this case or the appropriateness of applying that section to real property which may have vested in the non-debtor spouses prior to the enactment of the statute, the parties were directed to file proof of the respective marriage dates and were allowed to submit supplemental briefs. Although a supplemental brief was submitted only on behalf of the plaintiff,

the parties did present a stipulation stating that Stuart and Ronni Persky were married in 1974 and that Bernard and Shirley Persky were married in 1952.

We agree with the defendants that their entireties interests are not amenable to involuntary sale under section 363(h) not only for the reasons urged by them, but also on the basis of the constitutional issues left open by the Court of Appeals.

In view of the constitutional issues, the United States was notified pursuant to 28 U.S.C. § 2403(a). They did not appear.

*Issues of Law*

In order to dispose of the motions to dismiss the court needs to address four questions:

(A) What is the effect of the Court of Appeals' decision on defendants' second motion to dismiss;

(B) Is the estates' interest in the entireties' properties an "undivided interest" subject to section 363(h);

(C) Is Section 363(h) applicable to real property acquired prior to the adoption of the Bankruptcy Code;

(D) Is section 363(h) constitutional with regard to both the bankruptcy powers granted to Congress in Article I and also the limitations imposed upon those powers by the Fifth Amendment?

DISCUSSION

A. WHAT IS THE EFFECT OF THE COURT OF APPEALS' DECISION ON THE SECOND MOTION TO DISMISS?

■ We find no merit to plaintiff's assertion that this court is barred from reconsidering the legal sufficiency of the complaint by the "law of the case" doctrine.

This decision on debtor's second motion to dismiss is based on principles of retroactivity, statutory interpretation, and constitutional law. Although some constitutional issues were briefed prior to the court's first decision, since no court has ruled on them, the constitutional issues still remain. The Court of Appeals' decision clearly indicated that "[a]bsent an order directing a

§ 363(h) sale, the expression of our views would be merely advisory." *In re Persky*, 893 F.2d 15, 21 (2d Cir.1989). It is settled law that "questions that have not been decided do not become law of the case merely because they could have been decided." Wright, Miller & Cooper, *Federal Practice and Procedure, Jurisdiction,* § 4478 at 789 (1981 & 1990 Supp.) See also, *Liona Corporation Inc. v. PCH Associates (In re PCH Associates)*, 949 F.2d 585 (2d Cir.1991); *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 780–81, 83 L.Ed. 1184 (1939); *Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 177–78 (2d Cir.1967), *cert. denied* 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed.2d 1151, *reh. denied* 390 U.S. 1037, 88 S.Ct. 1406, 20 L.Ed.2d 298 (1968); *Pegues v. Morehouse Parish School*, 706 F.2d 735, 738 (5th Cir.1983). See, e.g., *Dick Warner v. Aetna*, 746 F.2d 126, 135 (2d Cir.1984).

B. IS THE DEBTOR'S INTEREST IN THE ENTIRETIES PROPERTIES AN "UNDIVIDED INTEREST" SUBJECT TO SECTION 363(h)?

Section 363(h) authorizes a trustee to "sell both the estate's interest" and "the interest of any co-owner" only with regard to "property in which the debtor had ... an *undivided interest* ..." (emphasis added). Prerequisite to an analysis of the trustee's authority to so sell is a determination of whether at the time of the commencement of the case the debtor had such an "undivided interest." The lack of clarity as to the meaning of this term is occasioned by the lack of uniformity in the manner in which the term is used by both courts and commentators when it is applied to any of the three forms of concurrent ownership specified in section 363(h). We are convinced, however, that in spite of the uncertainty as to the precise meaning of "undivided interest", there is sufficient agreement as to when and where it exists for us to determine whether the statutory criteria apply. Therefore, unless otherwise specifically indicated, our citation of authority with regard to the existence of undivided interest should not be taken as our concur-

rence with the view expressed in such authority as to the definition of that term.

 Section 363(h) purports to provide a trustee with greater power and authority to dispose of certain specific property interests than would be available either to the debtor or his creditors under State law. It does not, however, purport to alter or redefine the property rights upon which it was designed to operate. Therefore it is state law, and not bankruptcy law, to which we must look to identify and define those aspects of the property interests in question which determine their applicability to section 363(h). That this is so is evident from the fact that section 363(h) speaks in terms of property interests "at the time of the commencement of the case" prior to their alteration or modification by the bankruptcy process.

> State law and not federal law determines the nature and extent of a debtor's interest in property as of the date of the commencement of his bankruptcy case under all of the authorities. *Butner v. [United States],* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), *Erie Railroad etc. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938), *In re Kravitz,* 278 F.2d 820 (3d Cir.1960), and many others.

*In re Bundy,* 53 B.R. 582, 584 (Bankr. W.D.Pa.1985).

"The rule is that property interests and estates are to be dealt with in the bankruptcy courts in such a manner as to give full respect to the rules of property followed in the state where the property is located." *Reid v. Richardson,* 304 F.2d 351 (4th Cir.1962). See *In re Abdallah,* 39 B.R. 384, 386 (Bankr.D.Mass.1984); *In re Lambert,* 34 B.R. 41, 42 (Bankr.D.Colo. 1983); *In re Cipa,* 11 B.R. 968, 970 (Bankr. W.D.Pa.1981). See also *Farrey v. Sanderfoot,* —— U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

 Three distinct property rights are identified with regard to tenancy by the entirety: ownership, use and enjoyment, (hereinafter "usufruct") and survivorship. Before the plaintiff can be successful in compelling a sale under section 363(h), it

must show that the interests of the debtor (i.e., those interests the debtor had prior to the commencement of the case) are in fact "undivided interests" sufficient to justify the application of that section.

At common law, tenancy by the entirety was a unique type of joint tenancy: it existed only between husband and wife without right of partition. There was, however, an additional difference between joint tenancy and tenancy by the entirety: "joint tenants were seized of a share and of the whole (per my et per tout), but tenants by the entirety were seized of the whole and not of a share (per tout et non per my)." Moynihan, *Introduction to the Law of Real Property,* (2d ed. 1988) at 218–9 (hereinafter *"Moynihan"*). Indeed the designation "tenant by the entirety" denotes the interest of the tenant as being in the entirety or in the whole. As *Moynihan* notes the nature of the tenancy by the entirety was a result of the common law treatment of husband and wife as one legal entity. *Id.*

Even though joint tenancy was based on "unity of ownership" as well, the concepts were not identical: "[t]hat concept is the rather metaphysical one of a fictitious unity of persons as co-owners. Put more simply, this amounts to saying that for some purposes the joint tenants are viewed as a unit, but for other purposes they are recognized as having individual rights in respect of the property. This notion was expressed in the ancient maxim that joint tenants are seized 'per my et per tout' of a moiety or share and of the whole." *Id.* at 208. As will be seen hereinafter this distinction is crucial, for the lack of its understanding may result in inability to identify the different nature of these two types of tenancies. See *King v. Greene,* 30 N.J. 395, 493, 153 A.2d 49, 60 (1959). This distinction leads to one of the more important differences between joint tenancy and tenancy by the entireties at common law: the interest of one joint tenant was freely alienable although transfer of a simple interest would severe the joint tenancy and transform it to a tenancy in common, *Moynihan, supra* at 211, while a tenant by the

entirety could not unilaterally sever the tenancy or defeat the right of survivorship. *Id.* at 219.

The American Law of Property (hereinafter "*A.L.P.*") deals with the "fictitious unity" of joint tenants and provides that "[w]hen Bracton said that joint tenants were seized per my as well as per tout, he meant that while each joint tenant was seized of the whole, nevertheless, as between themselves and in their relation with persons other than the lord or their heirs, each joint tenant had an undivided interest as an individual which was equal to the interest of every other co-tenant." 2 *A.L.P.* § 6.1 at 4. *A.L.P.* further states that "[t]he joint tenant's right to the possession, use and enjoyment ... was inevitable ... held to be alienable." 2 *A.L.P.* § 6.2 at 7–8. With respect to tenancy by the entireties however, *A.L.P.* states:

> [T]he estate in entirety differs from joint tenancy in that the tenants in entirety have no individual interests which they can convey so as to breach the unities and defeat survivorship.

2 *A.L.P.* § 6.6 at 27.

One of the most significant differences between the incidents of ownership of real property held by a married man today and the incidents of ownership of real property held by a married man at common law is that the husband and wife entity which under common law held title to the real property which we now call a tenancy by the entireties, was then embodied in the husband alone. "As a result the husband had complete control and custody of the property held by the unity and the right to use and alienate it as he wished during the joint lives of himself and his wife." 2 *A.L.P.* § 6.6 at 28. See also: Dukeminier and Krier, *Property*, (2d ed. 1988) at 324 (hereinafter "*D & K*"); *Moynihan* at 219; Craig, *An Analysis of Estates by the Entirety in Bankruptcy*, 48 Am.Bankr.L.J. 255, 257 (hereinafter "*Craig*"). While at common law the rule was uniform, the adoption by the various states of their own versions of the Married Women's Acts created five different modifications of tenancies by the entirety. Heaton, *Administra-*

*tion of Entireties Property in Bankruptcy*, 60 Ind.L.J. 305 (hereinafter "*Heaton*"). See also *Moynihan* at 222–3; *Craig* at 258–9. The specific effect of New York's Married Women's Property Act is examined *infra*.

(1) *Title to the Entireties Property*

■ For the purpose of analyzing the nature of the ownership interest in order to determine whether it is an undivided interest, we will assume that the title to the entireties property, under New York law, is vested not in the separate husband/wife entity, but rather in the spouses themselves. The question therefore becomes whether the debtor's separate title or ownership right constitutes an "undivided interest"?

Common law and New York law authorities are crystal clear on one point: each spouse owns the entire property and has full title to the property. "Tenants by the entirety were seized of the whole and not of a share", *Moynihan* at 218–9; "They do not take by moieties, but both and each take the whole estate, that is to say, the entirety", *Lang v. Commissioner*, 289 U.S. 109, 111, 53 S.Ct. 534, 535, 77 L.Ed. 1066 (1933).

The New York State Court of Appeals has consistently held to the same effect. In *V.R.W. Inc. v. Klein*, 510 N.Y.S.2d 848, 68 N.Y.2d 560, 503 N.E.2d 496 (1986) the court held: "As long as the marriage remains legally intact, both parties continue to be seized of the whole, and the death of one merely results in the defeasance of the deceased spouse's coextensive interest in the property." In the *Matter of the Estate of Violi*, 492 N.Y.S.2d 550, 65 N.Y.2d 392, 482 N.E.2d 29 (1985) the court held: "Where property is held in a tenancy by the entirety ... and one spouse dies, the surviving spouse takes the entire estate, *not because of any right of survivorship, but because the spouse remains seized of the whole.*" (citations omitted) (emphasis added). In *Steltz v. Shreck*, 128 N.Y. 263, 28 N.E. 510 (1891) the court held: "These two real individuals by reason of their relationship, took the whole of the estate between them, and *each was seized of the*

*whole and not of any undivided portion"* (emphasis added). In *Reister v. Town Board of Town of Fleming,* 18 N.Y.2d 92, 271 N.Y.S.2d 965, 218 N.E.2d 681 (1966), the court held that "[o]nce we consider the nature of the tenancy by the entirety—a tenancy whose salient characteristic is the unique relationship between a husband and his wife—each of whom is seized of the whole and not of any undivided portion of the estate, it can be said that *both and each own the entire fee."* (emphasis added).

The same principle was applied by the bankruptcy court for this district. In *Gross v. Russo,* 1 B.R. 369 (Bankr. E.D.N.Y.1979) the trustee brought a suit seeking to set aside as fraudulent transfer, the bankrupt's conveyance to his wife of his interest in an entireties property. The court stated:

Let us examine what was transferred from the bankrupt to his wife and what is to be preserved for the benefit of the estate in the case at bar. All Russo could transfer to his wife is what he had and that was his interest in the tenancy by the entirety which he shared with her. *He never had a one-half interest in the property* and thus could not have conveyed it to her. Before October 19, 1973, he was seized of the entirety per tout et non per my and after transferring his interest in that estate to Tina, he had no interest in the property and she was seized of the entire fee. The transfer did not consist of the conveyance of a "half interest" and thus there can be no basis for ordering such an interest to be conveyed to the trustee.

*Id.* at 385. See also *In re Abdallah,* 39 B.R. 384, 389 (Bankr.D.Mass.1984).

We acknowledge that this particular type of joint ownership is analytically troublesome. We agree that the reasons underlying the creation of tenancy by the entirety may no longer be valid. See, *e.g.,* Spitzer, *Joint Tenancy with Right of Survivorship: A Legacy from Thirteenth Century England,* 16 Tex.Tech.L.Rev. 629 (hereinafter *"Spitzer"*); Hines, *Real Property Joint Tenancies: Law, Fact and Fancy,* 51 Iowa L.Rev. 582, 2 *A.L.P.* §§ 6.1–6.4. Nevertheless, since, as stated above, it is state law that both creates property rights and defines their scope, it is not within the province of federal courts to question the purpose or policies underlying such well-settled state law or the nature of the property rights established thereby. As stated by the United States Supreme Court in *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979):

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609 [81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)]. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

See also, *In re Rancourt,* 123 B.R. 143 (Bankr.D.N.H.1991); *Matter of Village Properties, Ltd.,* 723 F.2d 441, 443 (5th Cir.1984); *In re Kurth Ranch,* 110 B.R. 501, 504 n. 2 (Bankr.D.Mont.1990); *In re Multi–Group III Ltd. Partnership,* 99 B.R. 5, 7 (Bankr.D.Ariz.1989).

There is neither authority for this court either to overlook nor justification to overrule settled state property law that has withstood centuries of confusion and criticism, and which nevertheless has survived as one of the few fundamental unquestioned principles of real property law.

### (2) *The Indestructible Survivorship Right*

■ As noted above, in a tenancy by the entireties, each spouse has not only ownership of the whole, but in addition, a separate and distinct indestructible survivorship

interest, alienable and attachable independent from the ownership interest. In *Waldschmidt v. Shaw*, 5 B.R. 107 (Bankr. M.D.Tenn.1980) the court held:

> The trustee next insists that the right of survivorship is a sufficient interest in entireties property to entitle him to sell the entire property pursuant to 11 U.S.C. § 363(h). The court disagrees. In Tennessee one spouse's right of survivorship is not an undivided interest in entireties property as specifically required by § 363(h)(2) but rather one that is separate and alienable as such.

*Id.* at 110.

Since a section 363(h) sale would therefore necessarily involve a disposition not only of the non-debtor spouses' ownership interests, but their survivorship interests as well, the sale proposed by the plaintiff herein could not avoid disposing of more than is authorized by that section even if the ownership interests themselves were held to constitute undivided interests. See *Forbes v. Hankins*, 53 B.R. 18 (Bankr. M.D.Tenn.1985) where the court reaffirmed the *Shaw* decision and concluded that "[s]ince the survivorship interest may be sold separately, the trustee has no rights under Section 363(h) to sell the entire four parcels of property." *Id.* at 19. See also *Waldschmidt v. Hamilton*, 32 B.R. 337 (Bankr.M.D.Tenn.1983).

The survivorship rights under New York law and Tennessee law are identical. In both states each "spouse can convey his own contingent right of survivorship and individual creditors can levy on the contingent right." *Craig, supra* at 298 (New York law) and at 300 (Tennessee law); *Heaton, supra* at 327.

Even though, however, this court agrees with the final result reached in the *In re Shaw* line of cases, we find its reasoning questionable. Were the test for classifying a property right as an undivided interest to be the test used by the *Shaw* court, i.e.,

whether the right is separate and alienable, then interests in tenancy in common and in joint tenancy, which clearly represents undivided interests, would not be classified as such.[1]

■ As a result we believe that the extent to which the right of survivorship should be classified as an undivided interest must be based on its nature and not on its separate and alienable characteristics. Tenancy in common and joint tenancy created the undivided interest feature due to the nature of these tenancies. Even though each tenant was not the sole owner of the property and was not the only one entitled to the usufruct, yet no tenant could, prior to partition, identify and segregate his individualized portion of the property. No tenant, prior to partition, could have identified a portion of the property as individually owned or available to such tenant to the exclusion of the spouse. Therefore it was said that each tenant owned an undivided interest, i.e., no tenant owns the whole (distinguished from entireties property) and no tenant could seclude and divide his or her own interest without subjecting the property to partition proceedings. See generally, 2 *A.L.P.* §§ 6.1–6.6; *Moynihan, supra* at 207–225; *Spitzer, supra* at 632–638.

The nature of the survivorship right, however, is quite different. The survivorship right held by each spouse does not "compete" with the other spouse's survivorship right since only one of the spouses can survive the other. Even though "[t]he right of survivorship was considered a present right of ownership in each spouse not a contingent future interest", *Craig, supra* at 256, yet this particular right does not create the tension that exists regarding ownership and usufruct rights held in tenancy in common and joint tenancy. The survivorship right is a present right to obtain something in the future, i.e. sole entire

---

1. "Tenants in common have separate but undivided interests in the property; the interest of each is descendible and may be conveyed by deed or will ... Each tenant in common owns an undivided fractional part, and each has the right to possession of the undivided whole ...

joint tenants have the right of survivorship ... each owns the undivided whole of the property." *D & K, supra* at 280. The usufruct interests of a joint tenant are alienable as well although the survivorship interest is thereby destroyed. 2 *A.L.P.* § 6.2 at 8.

ownership instead of only one of multiple entire ownerships. On the death of one spouse, such spouse's survivorship interest, by definition, expires, and with it also expire all other property interests. The interests of the surviving spouse continues unaffected except for the fact that they are now free from competition of the expired rights of the expired spouse. It is therefore impossible for survivorship rights to compete.

New York courts, at least implicitly, do not view the survivorship right as an undivided interest. In *Hiles v. Fisher*, 144 N.Y. 306, 39 N.E. 337 (1895), the New York Court of Appeals held that "[t]he husband had a right to mortgage his interest, which was a right to the use of an undivided half of the estate during the joint lives and to the fee in case he survived his wife." See also *Goodrich v. The Village of Otego*, 216 N.Y. 112, 110 N.E. 162 (1915). New York courts treat the usufruct right and the survivorship right as different and separate rights, and while they treat the first as an undivided interest, they do not so treat the latter.

As a result we conclude that the survivorship right by itself is not an "undivided interest" subject to section 363(h) of the Bankruptcy Code.

### (3) *Usufruct*

■ Under the common law, husband-wife as a distinct unified legal entity, separate from either husband or wife as individuals, had the right to use, possess and enjoy the income derived from the property. The husband was the manager of the couple's property and had the right to the present enjoyment of all of the use, possession and income from the property. *Craig, supra* at 256. The New York's Married Women's Property Acts modified that common law rule with respect to entireties property. This new law provided for the usufruct to be split between the husband and wife, with the usefruct interest of both spouses becoming separately alienable and separately subject to levy by creditors. *Craig, supra* at 258 and at 298; *Heaton, supra* at 327 and at 333–334; *Moynihan, supra* at 223; 2 *A.L.P.* § 6.6 at 28.

There is some authority in the New York case law for the proposition that in New York the usufruct of a tenant by the entirety is an undivided interest. In *Goodrich v. The Village of Otego*, 216 N.Y. 112, 110 N.E. 162 (1915), the Court of Appeals held that "[t]he husband may sell or mortgage his interest in realty so held, which is the right to the use of an undivided half of the estate during the joint lives and the fee in case he survives his wife." See also *Hiles v. Fisher*, 144 N.Y. 306, 39 N.E. 337 (1895); *Lawriw v. City of Rochester*, 14 A.D.2d 13, 217 N.Y.S.2d 113, (App.Div.1961), *aff'd* 11 N.Y.2d 759, 226 N.Y.S.2d 695, 181 N.E.2d 631 (1962); *Lum v. Antonelli*, 476 N.Y.S.2d 921, 102 A.D.2d 258 (App.Div. 1984), *aff'd* 64 N.Y.2d 1158, 490 N.Y.S.2d 733, 480 N.E.2d 347 (1985); *Solomon v. Barth*, 515 N.Y.S.2d 979, 135 Misc.2d 574 (1987). Furthermore, the classification of the usufruct as an undivided interest is consistent with the analysis presented heretofore regarding the right of survivorship.

### (4) *The Non–Debtor Spouse's Rights in New York's Entireties Property are not subject to a Sale Under Section 363(h)*

■ Under the analysis presented above, of the three rights the debtor spouse had in the property prior to the commencement of the case, only usufruct is classified as an "undivided interest" under section 363(h) of the Bankruptcy Code. The question remains, therefore, whether or not section 363(h) permits the trustee to sell the entireties property free and clear of the non-debtor spouse's rights of ownership, survivorship and usufruct, when only the debtor's usufruct right is subject to the section. We believe that it does not.

Although prior cases have acknowledged the applicability of section 363(h) to the sale of entireties property, they have assumed without discussion that entireties interests were undivided interests sufficient to qualify under section 363(h). Their focus has been whether or not interests in entireties property are property of the estate or whether such interests are "exempt from process" under section 522(b)(2)(B). We were unable to find a single section 363 case which dealt with the issue by analyzing and classifying the relevant property

rights. We submit, therefore that the conclusory statements in prior case law with regard to the applicability of section 363(h) to New York entireties properties are not controlling herein. See *Napotnick v. Equibank,* 679 F.2d 316 (3d Cir.1982); *Reid v. Richardson,* 304 F.2d 351 (4th Cir.1962); *Sumy v. Schlossberg,* 777 F.2d 921 (4th Cir.1985); *In re Waxman,* 128 B.R. 49 (Bankr.E.D.N.Y.1991); *In re Morris,* 115 B.R. 752 (Bankr.E.D.N.Y.1990); *Mueller v. Youmans,* 117 B.R. 113 (Bankr. D.N.J.1990); *In re Boyd,* 121 B.R. 622 (Bankr.N.D.Fla.1989); *Harkins v. Oswald,* 90 B.R. 218 (Bankr.N.D.W.Va.1988); *Salem v. Coombs,* 86 B.R. 314 (Bankr. D.Mass.1988); *In re Townsend,* 72 B.R. 960 (Bankr.W.D.Mo.1987); *Zoltanski v. Brown,* 33 B.R. 219 (Bankr.N.D.Ohio 1983); *Waldschmidt v. Hamilton,* 32 B.R. 337 (Bankr.M.D.Tenn.1983); *Martine v. Cipa,* 11 B.R. 968 (Bankr.W.D.Pa.1981); *Greene v. Levenhar,* 30 B.R. 976 (Bankr. E.D.N.Y.1983); *Greene v. Levenhar,* 24 B.R. 331 (Bankr.E.D.N.Y.1982); *In re Weiss,* 4 B.R. 327 (Bankr.S.D.N.Y.1980); *Kirschenbaum v. Feola,* 22 B.R. 81 (Bankr. E.D.N.Y.1982); *In re Jeffers,* 3 B.R. 49 (Bankr.N.D.Ind.1980).

"Subsection (h) permits sale of a co-owner's interest in property in which the debtor had an undivided *ownership interest* such as a joint tenancy, a tenancy in common, or a tenancy by the entirety." (emphasis added). H.R.Rep. No. 595, 95th Cong., 1st Sess. 346 (1977); · S.Rep. No. 989, 95th Cong., 2d Sess. 56–57 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6302, 5842, *reprinted in* Norton Bankruptcy Code 1990–1991 ed. at 245. We have concluded above that only one single property right which the debtors had at the time of the commencement of the case would appear to be embraced by the wording of section 363(h): the usufruct right. However, the usufruct right is not an ownership interest; it is merely one of the incidents of such interest. But while it is an incident of an entireties interest, it is also an incident of many lesser possessory interests. While ownership or title may necessarily imply usufruct, the opposite is not necessarily so. It is a basic principle of American property law that the usufruct right follows title and

not vice versa. Generally while the one who has title has the usufruct, the one who has the usufruct right does not necessarily have title. If Congress had intended to reenact settled state property law by elevating the usufruct right above the ownership right and to provide that the debtor's usufruct right, by itself, was sufficient to render the title of the non-debtor spouse subject to defeasance, it would have expressly so provided.

Finally, the plaintiff's position that "if defendant's argument were valid, then no trustee, in any jurisdiction, could ever invoke section 363(h) to sell the interest of any debtor, in any tenancy by the entirety", may be disposed of summarily. Implicit in the argument stated, is the contention that by including "an undivided interest as a ... tenant by the entireties" among the interests which may be sold under section 363(h), Congress must have intended to include all of those interests which have been so laboriously discussed above; that the adjective "undivided" is mere surplusage whose sole function is to unintentionally render section 363(h) incapable of being complied with as written; and that this court should merely read out the word "undivided" in order to permit the statute to be implemented in a logical and sensible fashion. To this we respond that "our task is to apply the text, not to improve upon it." *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 459–60, 107 L.Ed.2d 438 (1989). Furthermore since section 363(h) may be applied as written to entireties property in states that recognize the undivided nature of the ownership interest in such property, see, e.g., *Farrey v. Sanderfoot,* —— U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), we are loathe to indulge in the unnecessary assumption that the Congress meant anything more or anything less in section 363(h) than that which was specifically set forth therein.

C. IS SECTION 363(h) APPLICABLE TO REAL PROPERTY ACQUIRED PRIOR TO THE ADOPTION OF THE BANKRUPTCY CODE?

■ The parties, as stipulated, were married in 1952 and 1974 respectively. The

plaintiff's pre-trial memorandum states, and it is not disputed, that Bernard and Shirley Persky acquired their real property on September 18, 1969 and that Stuart and Ronnie Persky acquired theirs on September 28, 1976. The plaintiff therefore seeks to have section 363(h) [2] applied to property rights that had vested prior to its effective date.

Section 363(h) of the Bankruptcy Code is a major deviation from the old Bankruptcy Act. Under section 2(a)(7) of the old Act, the bankruptcy courts had jurisdiction to "[c]ause the estates of bankrupts to be collected, reduced to money ... and liquidate all inchoate or vested interests of the bankrupt's spouse in the property of any estate whenever, under the applicable law of the state, creditors are empowered to compel such spouse to accept a money satisfaction for such interests." In many states, including New York, the non-debtor spouse could not be so compelled and their interests were therefore inviolable in the bankruptcy court. In *In re Morris*, 115 B.R. 752, 755–56 (Bankr.E.D.N.Y.1990) Chief Judge Duberstein held: "Under New York law this remedy is not available to a creditor holding a claim against one of the co-owners." In *Mueller v. Youmans*, 117 B.R. 113, 116 (Bankr.D.N.J.1990) the court held that "[u]nder the Bankruptcy Act which was in effect prior to enactment of the Bankruptcy Code in 1978, the trustee did not have the power to sell the fee interest in co-owned real property over the objection of a co-owner." See also Bienenfeld, *Creditors v. Tenancies By The Entirety*, 1 Wayne L.Rev. 105 (1955); Huber, *Creditors' Rights in Tenancies by The Entireties*, 1 B.C.Ind.Com.L.Rev. 197 (1960); Craig, *supra.* Under New York law, while creditors of only one spouse may be able to

levy and execute on the debtor's interests in the entireties property, they cannot affect either the survivorship or possessory interests of the non-debtor spouse. See *In re Weiss*, 4 B.R. 327, 330 (Bankr. S.D.N.Y.1980); *In re Morris*, 115 B.R. at 756 and authorities cited therein.

Case law has developed three different approaches in dealing with application of legislative acts to property rights vested prior to enactment of the legislation. Under all three, section 363(h) should not be permitted to affect property rights which had vested in a non-debtor co-owner prior to enactment.

(i) The first principle is a mere rule of interpretation disfavoring retroactive application of statutes effecting vested rights. In addressing a Congressional attempt to retroactively effect secured creditor's rights the Supreme Court held:

"It is enough that the reasonable and usual interpretation of such statutes is to confine their effect, so far as may be, to property rights established after they were passed ... the most obvious if not the only way of reaching that result would be by taking the amendment to effect subsequently established rights alone. That is a familiar and natural mode of interpretation."

*Holt v. Henley*, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914).

"It is a general rule that a statute which does not on its face expressly purport to act retroactively will not be given that construction by implication. This is because a retrospective law, in the general sense, is one which takes away or impairs vested rights acquired under existing laws, and hence is generally repre-

---

**2.** 11 U.S.C. § 363(h) provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

hensible, unjust, oppressive, and dangerous from a legal and ethical point of view. Accordingly, such retrospective operation, being looked upon by the courts with disfavor, will not be given unless the intent of the legislature to such effect is clear. This principle of construction has been applied to subsequent legislation affecting estates by the entireties as to which a retrospective operation is claimed."

Annotation, *Retrospective Operation of Legislation Affecting Estates By the Entireties*, 27 A.L.R.2d 868. See also, *Fullerton–Krueger Lumber Co. v. Northern Pac. Ry. Co.*, 266 U.S. 435, 45 S.Ct. 143, 69 L.Ed. 367 (1925); *Brewster v. Gage*, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930); *Litton Systems Inc. v. American Telephone and Telegraph*, 746 F.2d 168, 174 (2d Cir.1984).

In *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir.1981) the court found that Congress had intended to apply the substantive portions of the Bankruptcy Code retroactively. That aspect of the decision was overruled on appeal by *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (a decision that will be discussed in length, *infra*). Furthermore, the *Rodrock* court offered no substantial analysis to support its conclusion that "[w]e believe it was Congress' intent to apply the Reform Act retroactively."

Section 10–103(a) of the Commission version of the then proposed Bankruptcy Law, which was contained in the *Report of the Commission on the Bankruptcy Law of the United States*, July 1973, (hereinafter the *"Commission Report"*) stated:

"Applicability of this Act. The substantive rights of the parties in connection with any bankruptcy case or proceeding pending in the United States district courts on the effective date of this Act shall continue to be governed by prior law otherwise applicable to the exclusion of the provisions of this Act. *However, this Act shall apply in all cases or proceedings instituted after its effective date, regardless of the date of occur-*

*rence of any of the operative facts determining legal rights, duties, or liabilities hereunder."* (emphasis added)

The *Commission Report*, H.R. No. 93–137, 93rd Cong., 1st Sess., Part II, at 288–9 (1973), *reprinted in Collier on Bankruptcy*, 15th ed. (hereinafter *"Collier"*), appendix 2.

Based upon the above proposed language at least one commentator concluded that "[t]he customary judicial predilection for construing an amendatory statute as not intended to interfere with existing rights and liabilities, must yield to such a clearly expressed purpose, unless constitutional restraints preclude giving it effect." Plumb, *The Recommendations of the Commission on the Bankruptcy Laws of the United States—Exempt and Immune Property*, 61 Va.L.Rev. 1, 138 (1975).

This proposed section 10–103(a), however, was not adopted in its original form. The first paragraph of section 10–103(a) was adopted with minor changes as section 403(a) of the Bankruptcy Reform Act of 1978, but the second paragraph, expressly dealing with retroactive application of the Code was deleted. Even if section 403(a) as adopted were to be viewed as implying retroactive application of the Bankruptcy Code, the deletion of the second paragraph expressly authorizing such retroactivity requires a holding that Congress intended that the Bankruptcy Code not apply to property rights which had vested prior to its adoption. *United States v. Security Industrial Bank*, 459 U.S. at 81, 103 S.Ct. at 413. In *Roth v. Pritikin*, 710 F.2d 934 (2d Cir.1983) *cert. denied*, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983), the court held, contrary to the 10th Circuit in *Rodrock*, that an absence of manifested intent to apply a statute retroactively is sufficient to hold that a prospective application only was intended.

The *Roth v. Pritikin* decision, however, made another holding which effects the case at bar:

Moreover, the Copyright Act, although passed by Congress on October 19, 1976, was not made effective until January, 1978. It would seem anomalous for the

legislature to defer the effective date of the Act if it intended the statute, when implemented, to govern retrospectively. *Id.* at 939. The Bankruptcy Code, enacted on November 6, 1978, effective October 1, 1979, clearly falls within the *Roth* reasoning.

We hold therefore that under the usual and ordinary rules of statutory interpretation, section 363(h) of the Bankruptcy Code does not apply to rights which had vested prior to its enactment. (This opinion does not address the applicability of section 363(h) to rights created during the gap period. See *Hertzberg v. Hirschfield,* 746 F.2d 349 (6th Cir.1984)).

(ii) The second approach to an analysis of the retroactive application was set forth in *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). While *Bradley* may be considered an exception to the rule of construction presented heretofore, *Litton Systems Inc. v. AT & T,* 746 F.2d at 173–74 following *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407; see, *e.g., Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); *cf. Von Allmen v. Connecticut Teachers Retirement Board,* 613 F.2d 356 (2d Cir. 1979); *Brown v. General Services Administration,* 507 F.2d 1300 (2d Cir.1974), *aff'd on other grounds,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), we conclude that even under the *Bradley* test, section 363(h) should be applied only prospectively.

The *Bradley* court, facing the applicability of 20 U.S.C. § 1617 (1970 ed. & supp.) (attorney's fees in school desegregation cases) to cases pending prior to its enactment, presented a three-phase analysis:

 (a) The nature and the identity of the parties;

 (b) The nature of their rights; and

 (c) The nature of the impact of the change in law upon those rights.

The court upheld the retroactive application of the statute discussed there based on the following facts and conclusions:

 1. As a school board the defendant is a publicly funded government entity. *Id.* 94 S.Ct. at 2019.

 2. The plaintiff's effected rights were constitutional in nature. *Id.*

 3. School desegregation litigation is different from "mere private cases between individuals." *Id.*

 4. The Act was intended to deal with issues of "great national concern." *Id.* at 2020.

 5. The statute did not increase the burden on the school board since it did not change its constitutional responsibilities. *Id.* at 2021.

In *Litton Systems Inc. v. AT & T,* 746 F.2d 168, the Court of Appeals for the Second Circuit adopted the *Bradley* formula. *Compare, Campbell v. United States,* 809 F.2d 563 (9th Cir.1987); *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (approving *Litton* and disapproving of *Campbell* ). The issue involved there was whether a statute increasing the allowed post-judgment interest should be applied retroactively. The court held that it should not. First, the court held that the suit was between private parties and that "there is little doubt that national interests are not effected by the outcome of this collateral action to secure an increase in the rate of post-judgment interest." *Id.* at 175. Furthermore, the court declined to view the dispute as being more than a private one merely because the plaintiffs had brought their suit as "private attorneys general bringing suits that serve the national interest." *Id.*

Second, the court followed *Bradley* and "refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Id.* Therefore the court held that AT & T had a right to rely on the preexisting rate of interest.

Third, the court held that the retroactive application of the statute involved would " 'impose an additional or unforeseeable ob-

ligation' upon the disadvantaged party."
*Id.* at 176.

With regard to "an additional or unforeseeable obligation upon the disadvantaged party", we note that even though sections 363(i)[3] and 363(j)[4] contain provisions designed to compensate the non-debtor spouse for the interests so disposed of, implementation of section 363(h) would dramatically change the position of the non-debtor spouse. Under New York law, each spouse owns the entire fee in entireties property together with an indestructible right of survivorship. Application of section 363(h) would abrogate this survivorship right. Where a non-debtor spouse had insufficient resources to invoke section 363(i), such spouse could be ejected from the marital home with compensation based at best upon statistics, actuarial tables and similar criteria whose predictability, although statistically relevant, is not designed to provide sufficient funds to acquire comparable living quarters. See, *e.g.,* *Greene v. Levenhar,* 30 B.R. 976 (Bankr. E.D.N.Y.1983) following *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); *Community National Bank v. Persky (In re Persky),* 78 B.R. 657, 665–66 (Bankr.E.D.N.Y.1987), *rev'd on other grounds,* 893 F.2d 15 (2d Cir.1989).

The harsh effects of the application of section 363(h) to this case, are presented in Heaton, *Administration of Entireties Property in Bankruptcy,* 60 Ind.L.J. 305, 326: "Finally to protect the marital unit, section 363(h) should not be applied where an individual debtor seeks to exempt his interest(s) in entireties property ... married couples who own houses by the entireties will not be required to bear the burden of relocating in a market of higher prices and mortgage rates."

We hold that the case at bar is subject to the analysis and legal conclusions of the *Litton* court and that the burdens upon the non-debtor spouse of raising sufficient money to purchase the debtor spouse's interests in the entireties properties as well as the burden of relocating are such "additional or unforeseeable" detrimental obligations.

(iii) The third approach to an analysis of section 363(h) which leads us to conclude that it must be construed as applicable prospectively only, involves the constitutional problems which might have to be addressed were we to conclude that Congress intended to enact legislation that retroactively affects vested property rights. *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (hereinafter *"Security Industrial"*). *Security Industrial* holds that, absent a clear legislative intent to the contrary, amendments to bankruptcy laws which effect vested property rights should be construed as prospective only. While, however, the majority held that the retroactive application of the section under consideration (section 522(f) of the Bankruptcy Code) entailed difficult constitutional questions, and therefore the court would rely on the ordinary rules of interpretation as above presented, the minority argued that the section should be viewed as prospective only regardless of the existence of constitutional issues: "I would affirm the judgment of the Court of Appeals simply on the compelling authority of *Holt v. Henley* ... I would much prefer to avoid in this way the dicta the court enunciates with respect to takings." *Id.* at 85, 103 S.Ct. at 416.

Even though *Security Industrial* was severely criticized, Rogers, *The Impair-*

---

**3.** 11 U.S.C. § 363(i) provides:

(i) Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

**4.** 11 U.S.C. § 363(j) provides:

(j) After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

ment of Secured Creditors' Rights in Reorganization: A Study of the Relationship Between the Fifth Amendment and the Bankruptcy Clause, 96 Harv.L.Rev. 973 (1983) (hereinafter "Rogers"), it was widely followed. See Bennett v. New Jersey, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), In re Thompson, 867 F.2d 416 (7th Cir.1989); United States v. Wyle, 889 F.2d 242 (9th Cir.1989); Boddie v. American Broadcasting, 881 F.2d 267 (6th Cir.1989), reh. denied, en banc, 1989 WL 83160, 1989 U.S.App. Lexis 18956 (6th Cir.1989), cert. denied 493 U.S. 1028, 110 S.Ct. 737, 107 L.Ed.2d 755 (1990); Vuitton v. Spencer Handbags Corp., 765 F.2d 966 (2d Cir.1985); Litton Systems Inc. v. AT & T, 746 F.2d 168 (2d Cir.1984); Roth v. Pritikin, 710 F.2d 934 (2d Cir.1983), cert. denied 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983).

The issue the minority wished to avoid was whether a retroactive application of section 522(f) might violate the Takings Clause of the Fifth Amendment, U.S. Const. Amend V. We are convinced that to the extent that it is applied to property interests of non-debtors which vested prior to its enactment, the power granted to the trustee under section 363(h) impacts upon the Bankruptcy Clause U.S. Const., art. I, § 8, cl. 4, and the Takings Clause of the Fifth Amendment, U.S. Const., Amend. V. The constitutional aspects will be dealt with in (D) infra. Nevertheless,

> Even the spectre of a constitutional issue concerning the proper application of the 'takings' clause', however, is sufficient cause to construe the statute to provide for exclusively prospective relief, particularly in the absence of any clear congressional mandate to the contrary. Roth v. Pritikin, 710 F.2d at 939.

### D. IS SECTION 363(h) CONSTITUTIONAL WITH REGARD TO BOTH THE BANKRUPTCY POWERS GRANTED TO CONGRESS IN ARTICLE I AND ALSO THE LIMITATIONS IMPOSED UPON THOSE POWERS BY THE FIFTH AMENDMENT?

Although the constitutionality of section 363(h) has been raised, it has never been resolved much less analyzed in depth. See In re Persky, 893 F.2d 15, 21 (2d Cir.1989); Greene v. Levenhar, 30 B.R. 976 (Bankr. E.D.N.Y.1983); In re Townsend, 72 B.R. 960 (Bankr.W.D.Mo.1987); In re Ford, 3 B.R. 559 (Bankr.D.Md.1980), aff'd 638 F.2d 14 (4th Cir.1981). Our review of the constitutionality of section 363(h) focuses first upon Article I and then upon the Fifth Amendment.

Article I is a grant of power to Congress. The Fifth Amendment is a limitation upon those powers. Any analysis of the constitutionality of section 363(h) must first inquire whether Congress has the power to enact such a statute. If we conclude that it does, we must then inquire whether the manner by which such power has been exercised is in accord with the proscriptions imposed by the Fifth Amendment.

### I. ARTICLE I: THE BANKRUPTCY CLAUSE

"The Congress shall have power ... [t]o establish ... uniform laws on the subject of bankruptcies throughout the United States." U.S. Const. Art. 1, § 8, Cl. 4 (hereinafter "Bankruptcy Clause"). The relationship between the Bankruptcy Clause and the Takings Clause, with respect to impairment of secured creditors rights, was analyzed by Rogers, supra. Rogers suggests, contrary to what appears to be established law, that the Bankruptcy Clause itself, exclusive of the Takings Clause, limits congressional bankruptcy power. "[F]or the shift of emphasis from the bankruptcy clause to the fifth amendment may be but one manifestation of the abandonment of any serious effort to regard government (federal or state) as having only specific granted powers whose scope is limited by the terms of the explicit or implicit grant, rather than as possessing plenary powers over all human endeavors, restricted only by specific limiting principles." Rogers, supra at 1031. Tribe, American Constitutional Law (2d ed. 1988), (hereinafter, "Tribe") at 326 n. 10.

Judicial analyses of the constitutional limits of Congress' bankruptcy power are

sparse. Ours starts with *In re Klein,* reported in a note to *Nelson v. Carland,* 42 U.S. (1 How.) 265, 11 L.Ed. 126 (1843), in which Justice Catron, sitting as a circuit judge, stated that the bankruptcy power "extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this is its least limit. Its greatest is a discharge of the debtor from his contracts. And all intermediate legislation, effecting substance and form, but tending to further the great end of the subject—distribution and discharge—are in the competency and discretion of Congress." See also *In re Central Funding Corp.,* 75 F.2d 256, 260 (2d Cir.1935).

The threshold question is therefore twofold: whether section 363(h) falls within the boundaries of "intermediate legislation", and whether section 363(h) enhances the "great end" of distribution and discharge.

It is clear that section 363(h) has nothing to do with the discharge of the debtor in a chapter 7. Under current American bankruptcy law the ability of the debtor in a chapter 7 case to pay his creditors, in part or in full, no longer has any bearing on the right to a discharge. 11 U.S.C. § 727. It may be argued, however, that section 363(h) enhances the distribution to creditors since it may increase the realizable value of the estate. In addition, it may serve to decrease litigation. But even so, section 363(h) cannot be sustained as constitutional unless it falls within the grant of congressional power embodied by the Bankruptcy Clause. Consider the following comment made by Judge Posner:

> "We hesitate to suggest that no prospective curtailment of property rights could ever violate that clause [fifth amendment]. What if Congress passed a law that all property sold after January 1, 1990 is subject to being taken by the federal government without compensation?"

*In re Thompson,* 867 F.2d 416, 422 (7th Cir.1989).

Pursuing Judge Posner's example, what if legislation were enacted providing that private property could be taken for the benefit of debtors in bankruptcy throughout the country with just compensation provided. Could such legislation be upheld under the Bankruptcy Clause? We think not.

> "But, while it is true that the power of Congress under the bankruptcy clause is not to be limited by the English or Colonial law ... it does not follow that the power has no limitations. Those limitations have never been explicitly defined, and any attempt to do so now would result in little more than a paraphrase of the language of the Constitution without advancing far toward its full meaning ... the nature of this power and the extent of it can best be fixed by gradual process of historical and judicial 'inclusion and exclusion'".

*Continental Illinois Bank v. Chicago R.I.,* 294 U.S. 648, 669–70, 55 S.Ct. 595, 603–04, 79 L.Ed. 1110 (1935).

Federal bankruptcy laws have been challenged under the Bankruptcy Clause as extending the bankruptcy purview beyond that of the English law. They have also been challenged both under the Bankruptcy Clause and the Takings Clause when the scope of such laws expanded into areas only peripherally related to the bankruptcy arena. None of the statutes addressed by these cases, however, have ever attempted to expand the scope of Congress's bankruptcy power as does section 363(h).

> "It is true that the original purpose of our bankruptcy acts was to equal distribution of the debtor's property among his creditors ... But the scope of the bankruptcy power conferred upon Congress is not necessarily limited to that which has been exercised. The first act provided only for compulsory proceedings against traders, bankers, brokers and underwriters. The operation of late ones has been gradually extended so as to include practically all insolvent debtors; to provide for voluntary petitions; and to permit compositions with creditors ... The discharge of the debtor has become to be an object of no less concern than the distribution of his property."

*Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 587–88, 55 S.Ct. 854, 862–63, 79 L.Ed. 1593 (1935). See also, *Ashton v. Cameron County* (Cardozo J., dissenting), 298 U.S. 513, 535–36, 56 S.Ct. 892, 898–99, 80 L.Ed. 1309 (1936).

In *Continental Illinois Bank v. Chicago R.I.,* 294 U.S. 648, 671, 55 S.Ct. 595, 604, 79 L.Ed. 1110 (1935) the court stated that "[t]aken altogether, they [the extensions to bankruptcy power] demonstrate in a very striking way the capacity of the bankruptcy clause to meet new conditions as they have been disclosed as a result of the tremendous growth of business and development of human activities from 1800 to the present day."

As was seen in part (B) *supra,* the tenancy by the entirety, as a legal institution, existed as early as the thirteenth century. It was adopted by some states in its original common law form and with variety of changes in other states. The problem section 363(h) is designed to deal with is by no means a new one, and is by no means related to the "growth of business" and/or "development of human activity."

As the historical development of the bankruptcy law shows, see *Louisville Joint Stock,* 295 U.S. 555, 55 S.Ct. 854 and *Ashton v. Cameron County,* 298 U.S. 513, 56 S.Ct. 892, courts have recognized that the Bankruptcy Clause permits Congress to expand the availability of the bankruptcy remedy to a larger class of entities "desiring" to become "debtors in bankruptcy", to enlarge the availability of remedies by allowing voluntary as well as involuntary petitions, by developing the remedy of "compositions" or "reorganizations". The natural result of this progression was to subject the creditor body to a broader range of bankruptcy remedies.[5] What has never been upheld, however, is the subordination of property rights of a non-creditor to the bankruptcy process; yet this is precisely what section 363(h) attempts to do. The constitution recognizes the creation of rights, duties, and obligations by virtue of relationships such as husband and wife, sovereign and citizen, and debtor and credi-

tor. But this is very different from section 363(h). When Congress determines that corporations may file a voluntary petition to reorganize, it is undoubtedly within the grant of power of the Bankruptcy Clause, even though the result may subject many corporate creditors, who were not previously subject to, the bankruptcy process. When Congress, however, determines that property of a third party, not a creditor or an insider of the debtor, and having nothing to do with the bankruptcy process, can be taken, affected or appropriated, wholly or partially, for the benefit of the debtor's estate or its creditors, it has gone beyond that which is permissible under the Bankruptcy Clause.

Cases examining the Bankruptcy Clause have emphasized that bankruptcy legislation, by nature, regulates the debtor-creditor relationship. See *Continental Illinois,* 294 U.S. at 672–73, 55 S.Ct. at 604–05, citing *Hanover National Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (" 'the subject of bankruptcies' was nothing less than 'the subject of the relations between an insolvent or non-paying or fraudulent debtor, and his creditors, extending to his and their relief' "); *Ashton v. Cameron County,* 298 U.S. 513, 56 S.Ct. 892 (Justice Cardozo, dissenting, favoring a much broader reading of the Bankruptcy Clause than was taken by the majority, stated that "[i]t is enough then, in an omnibus proceeding between a non-paying debtor on the one side and the creditors on the other, the debtor-creditor relation is to be readjusted or extinguished." at 537, 56 S.Ct. at 899. Two years later in *United States v. Bekins,* 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938), the court followed the result favored by Justice Cardozo in *Ashton* ); *In re Central Funding Corp.,* 75 F.2d 256, 260 (2d Cir.1935) ("Bankruptcy laws are designed primarily to distribute equitably the property of a debtor among his creditors"); *Brooklyn Trust Co. v. R.A. Security Holdings,* 134 F.2d 164, 165 (2d Cir.1943) ("we can see nothing to prevent Congress from extending the application of the bankruptcy power in such a way as to

---

**5.** Frimet, *The Birth of Bankruptcy in the United States,* 96 Comm.L.J. 160 (1991).

protect the process of dealing with liens against its property.")

In *Ginsberg v. Lindel,* 107 F.2d 721 (8th Cir.1939) the court approached the issue from a due process point of view. The principle embodied in the ruling, however, is nevertheless enlightening:

> Of course under the bankruptcy power Congress may provide for the fair and equitable distribution of a debtor's property among his creditors; may discharge the debtor from liability for pre-existing debts; may impair or destroy the obligation of private contracts; and may effect changes in the lienholder's remedy or delay its enforcement ... There is, however, a significant difference between a property interest and a contract ... and the exercise of these powers does not permit the total or partial destruction of vested property rights.

*Id.* at 726.

Section 363(h) purports to allow an action which is far beyond the acceptable expansions of the bankruptcy power. It interferes with property rights held by a third party, a non-creditor stranger to the bankruptcy proceedings, just because that third party's rights may affect the value of the debtor's property rights. If such an intervention were to be allowed, we can see no limit to the bankruptcy power. If the Bankruptcy Clause gives Congress the power to grant the bankruptcy court jurisdiction to authorize a section 363(h) sale under the facts herein presented, why could not Congress grant the bankruptcy court jurisdiction to authorize a trustee to compel a sale of real property adjacent to that of the debtor as part of an assembly where such sale would net the estate a greater sales price for its property than the separate sale of the debtor's property would; why could it not permit Congress to authorize the bankruptcy court to prohibit an adjacent owner from making the adjacent property available for sale where such prohibition, by decreasing supply, would increase the market value of the debtor's real property?

We find *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), inapposite. In *Rodgers* a majority of 5–4 held that section 7403 of the Internal Revenue Code (hereinafter "I.R.C.") allows the district courts to order the sale of a family home in which a delinquent taxpayer had an interest but in which the taxpayer's spouse, who did not owe any of that indebtedness, had a separate homestead right under Texas law. The approval of section 7403 of the I.R.C., however, has no bearing on the legitimacy of section 363(h) of the Bankruptcy Code.

First, the spouse's right effected in *Rodgers* was her homestead right. The non-debtor spouses' rights in the case at bar are rights as tenants by the entirety. "More important, tenancies by the entirety pose a problem quite distinct from that at issue in the case of homestead rights." *Rodgers,* 461 U.S. at 702, n. 31, 103 S.Ct. at 2147, n. 31. "The effect of tenancies by the entirety is to create an immunity from the tax collector far broader than that created by the Texas homestead provisions." *Rodgers,* 461 U.S. at 719, n. 10, 103 S.Ct. at 2156, n. 10 Blackmun, J. dissenting.

Second, as the majority opinion in *Rodgers* stressed "we believe that the better analogy in this case is not to the traditional rights of lienholders, but to the traditional powers of a taxing authority." *Rodgers,* 461 U.S. at 702, 103 S.Ct. at 2147. The case at bar, however, has nothing to do with traditional powers of taxing or any other executive agencies. Furthermore, section 363(h) attempts to introduce a radical change in the traditional treatment of concurrent ownerships in bankruptcy and to upset the immunity of a tenancy by the entireties from an involuntary partition.

Finally, even though the *Rodgers* decision did not analyze the scope of the Taxing Clause, *U.S. Const., Art. I, § 8, Cl. 1,* the court stated that "[o]ur reading of § 7403 is consistent with the policy inherent in the tax statutes in favor of prompt and certain collection of delinquent taxes", *Rodgers,* 461 U.S. at 694, 103 S.Ct. at 2143 and that the power granted in section 7403 is an "exercise of sovereign prerogative, incident to the power to enforce the obligations of the delinquent taxpayer himself

and ultimately grounded in the constitutional mandate to 'lay and collect taxes' ". *Rodgers,* 461 U.S. at 697, 103 S.Ct. at 2144. It may well be that for some purposes the Taxing Clause is broader than the Bankruptcy Clause. Each of these clauses has a specific purpose vastly different from the other. The fact that one clause may allow a certain action does not necessarily mean that such action will be allowed under the other. Each clause must be treated in light of those distinctive goals and purposes for which it was intended and in light of the legislation and case law developed pursuant to it.

While *In re Prudential Lines, Inc.,* 928 F.2d 565 (2d Cir.1991) *cert. denied* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 may appear to require the opposite result, this however is only apparent. In the *Prudential* case the Court of Appeals affirmed an order enjoining the debtor's holding company from taking a worthless stock deduction where such action would have adversely effected the net operating loss of the debtor corporation. There, however, the enjoined party was not a stranger to the bankruptcy proceedings: it was the debtor's parent holding company and it had filed an objection to the debtor's proposed plan of reorganization. As an equity holder in the debtor and as a participant in the debtor's bankruptcy proceeding, the holding company was within the class directly subject to legislation under the Bankruptcy Clause. None of that exists here. The non-debtor spouses did not participate in the bankruptcy process and were neither creditors or equity holders with regard to these debtors.

Further with regard to the constitutional limits on the exercise of bankruptcy court jurisdiction over strangers to the proceedings, although the case law is split as to whether section 505(a)(1) of the Bankruptcy Code which permits the court to determine "the amount or legality of any tax", permits a bankruptcy court to determine the tax liability of a non-debtor, see *Jon Co. Inc. v. United States,* 30 B.R. 831 (D.Colo. 1983); *United States v. Huckabee Auto Co.,* 46 B.R. 741 (M.D.Ga.1985), *aff'd* 783 F.2d 1546 (11th Cir.1986); Comment, *11*

U.S.C. § 505(a): Does It Allow the Bankruptcy Court to Determine a Third Party's Tax Liability,* 77 Ky.L.J. 463 (1989), the bankruptcy court does not have such jurisdiction in this Circuit. *In re Brandt–Airflex Corp.,* 843 F.2d 90 (2d Cir.1988). Even in those jurisdictions which do recognize such bankruptcy court jurisdiction, authority may be found under the taxing power thus avoiding consideration of the constitutional limits to the Bankruptcy Clause.

Finally, the cases under section 505(a)(1) dealt with the issue from a jurisdictional angle and did not analyze the scope of the Bankruptcy Clause. Therefore, even those cases holding the bankruptcy court can determine a third party's tax liability are not controlling.

We need not at this time attempt to define the outermost limits of the power granted to Congress in the Bankruptcy Clause. We recognize, however, that when operating in a field where definitive guidelines were never adopted, and where the judicial literature offers only an ad-hoc solution to an ever-changing problem and newly-emerging questions, the court is left with its own independent discretion. Under the analysis presented and the case law analyzed we believe that in enacting section 363(h) of the Code, Congress went beyond the power vested in it by the Bankruptcy Clause.

## II. LIMITATIONS IMPOSED BY THE FIFTH AMENDMENT

 The Takings Clause of the Fifth Amendment provides that "nor shall private property be taken for public use, without just compensation." Although the Fifth Amendment speaks only of a taking of private property for a public use, it is settled law that private property could not be taken for other than public use even if just compensation were to be paid. The cases have repeatedly stated that " 'one person's property may not be taken for the benefit of another person without justifying public purpose, even though compensa-

tion be paid'". *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

■ For purposes of this argument the court will assume that the compensation provided under section 363(i) and (j) is just compensation as required by the Fifth Amendment. Difficulty still remains with respect to the "public use" requirement. In this pending proceeding the sole beneficiary of section 363(h) application would be the plaintiff, a secured creditor, although this may not always be the case. The question is therefore whether or not such benefit to a class of creditors satisfies the "public use" requirement. Conceding that section 363(h) is Congress' adoption of a public policy to maximize distribution of debtors' assets to creditors, and to equitably allocate burdens and benefits, the question still remains whether or not such public policy meets the "public use" requirement of the Fifth Amendment. We think it does not.

■ First, we note that there is almost universal agreement that the power given to Congress by the Bankruptcy Clause may not overstep the limitations imposed by the Due Process and Takings Clauses of the Fifth Amendment. "Congressional power under the bankruptcy clause, of course, is also limited by such restraints as those of article III, and of the Bill of Rights." *Tribe, supra.* See also *Security Industrial*, 459 U.S. 70, 103 S.Ct. 407; *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) *reh. denied* 296 U.S. 661, 56 S.Ct. 82, 80 L.Ed. 471 (1935); *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir. 1981); *In re Gifford*, 669 F.2d 468 (7th Cir.1982), *reh. en banc*, 688 F.2d 447; *In re Negri*, 27 B.R. 941 (Bankr.E.D.N.Y.1983). *Contra* see *Rogers, supra.* However even applying the *Rogers* analysis we find that section 363(h) exceeds the Congressional grant of power found in the Bankruptcy Clause. See paragraph D(I), *supra.*

Second, we hold that, with regard to tenancies by the entirety, the sale of the interest of the non-debtor spouse under section 363(h) of the Bankruptcy Code would invoke the Fifth Amendment in two distinct ways: just compensation and taking for a public purpose. One should not confuse the "taking" concept with the "compensation" requirement. Even with just compensation, the right to take private property is not limitless. Were this not so, the public use provision in the Fifth Amendment would be a nullity. If payment of full or just compensation were all that is required, then government would be able to take any property, for any purpose, private or public, subject only to payment of just compensation. We refuse to follow an interpretation that would provide such a result.

> Most people know a taking when they see one ... After the taking, X's relationship to the object or the land was fundamentally transformed; he could no longer use it at all, and other people could invoke legal arguments and mechanisms to keep him away from it exactly as he had been able to invoke such arguments and mechanisms before the taking had occurred.

*Tribe, supra* at 592.

Although one commentator relying on *United States v. Sioux*, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) suggested that "taking has occurred unless Congress ... (1) has made a good faith effort to give the Indians full value of their land and (2) has thus merely transmuted the property into another form of asset", Annotation, *Supreme Court's views as to what constitutes "taking" within meaning of Fifth Amendment's prohibition against taking of private property for public use without just compensation*, 89 L.Ed.2d 977, section 6 (hereinafter *"the Taking Annotation"*), a careful reading of the *Sioux* decision results in a different conclusion. As the Court stated:

> Here, there is no doubt that the Black Hills were "taken" from the Sioux in a way that wholly deprived them from their property rights to the land. The question presented is whether Congress was acting under circumstances in which that "taking" implied an obligation to pay just compensation, or whether it was acting pursuant to its unique powers to manage and control tribal property as

the guardian of Indian welfare, in which event the Just Compensation Clause would not apply.

*United States v. Sioux*, 448 U.S. 371, 409 n. 26, 100 S.Ct. 2716, 2738 n. 26, 65 L.Ed.2d 844 (1980).

"The 'good faith effort' and 'transmutation of property' concepts referred to in *[Three Tribes of] Fort Berthold [Reservation v. United States*, 182 Ct.Cl. 543, 390 F.2d 686 (1968)] are opposites sides of the same coin. They reflect the traditional rule that a *trustee may change the form of trust assets as long as he fairly (or in good faith) attempts to provide his ward with property of equivalent value.*

*Id.* at 416, 100 S.Ct. at 2741 (emphasis added).

Not only does the *Sioux* decision not support the conclusion that transmutation of property negates "taking" under the Fifth Amendment, it stands for the opposite conclusion.

Third, the court believes that the sale of the non-debtor spouse's rights in the entireties property under section 363(h) of the Bankruptcy Code violates the Takings Clause of the Fifth Amendment as being taking of private property for private purpose. "[T]akings for private purpose had widely if not uniformly been regarded as illegal long before the Court held such takings violative of the fourteenth amendment ... If such public purpose was absent, no compensation could suffice; the taking would have to be set aside." *Tribe, supra* at 589.

Public use, however, has never given rise to a test of general application. "[T]he Supreme Court has generally not been very precise in defining what constitutes a 'taking' of private property that is compensable under the Fifth Amendment and has expressly foresworn any attempt to develop rigid rules or a set formula for making that determination. Instead, the Supreme Court has relied on a case-by-case factual analysis—producing what one commentator once termed a 'crazy quilt pattern of Supreme Court doctrine' on this issue." *The Taking Annotation, supra,* para. 2a,

citing Sax, *Takings and the Police Power,* 74 Yale L.J. 36 (1964). Since no case involving bankruptcy laws is on point, see, e.g., *Ashton v. Cameron County,* 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936) *reh. denied* 299 U.S. 619, 57 S.Ct. 5, 81 L.Ed. 457 (1936); *United States v. Bekins,* 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938) *reh. denied* 304 U.S. 589, 58 S.Ct. 1043, 82 L.Ed. 1549 (1938); *Louisville Joint Stock v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); *Wright v. Vinton,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); *Continental Illinois Bank v. Chicago R.I. & P.,* 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); *Wright v. Union Central,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938) *reh. denied* 305 U.S. 668, 59 S.Ct. 56, 83 L.Ed. 433–434 (1938); *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), we must find guidance in other cases where statutes were opposed as violative of the Takings Clause of the Fifth Amendment.

The application of the Takings Clause has been considered under many different topics: condemnation of land for historical preservation purposes, *United States v. Gettysburg,* 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576 (1896); *Roe v. Kansas,* 278 U.S. 191, 49 S.Ct. 160, 73 L.Ed. 259 (1929), eminent domain action for housing purposes, *Block v. Hirsh,* 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921); *Brown v. United States,* 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923); *Berman v. Parker,* 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), eminent domain action for military purposes, *Old Dominion Land v. United States,* 269 U.S. 55, 46 S.Ct. 39, 70 L.Ed. 162 (1925); *United States v. Welch,* 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946), eminent domain action for natural resources development; *Kaukauna Water-Power Co. v. Green Bay,* 142 U.S. 254, 12 S.Ct. 173, 35 L.Ed. 1004 (1891); *Fallbrook v. Bradley,* 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369 (1896); *Clark v. Nash,* 198 U.S. 361, 25 S.Ct. 676, 49 L.Ed. 1085 (1905), eminent domain action for recreation pur-

poses, *Shoemaker v. United States,* 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893); *Rindge v. County of Los Angeles,* 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186 (1923), eminent domain action for transportation purposes; *Offield v. New York,* 203 U.S. 372, 27 S.Ct. 72, 51 L.Ed. 231 (1906); *Lake Erie v. State Public Utilities,* 249 U.S. 422, 39 S.Ct. 345, 63 L.Ed. 684 (1919); *Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), *reh. denied* 369 U.S. 857, 82 S.Ct. 931, 8 L.Ed.2d 16 (1962); *Cincinnati v. Vester,* 281 U.S. 439, 50 S.Ct. 360, 74 L.Ed. 950 (1930).

None of the public uses or public purposes upheld as sufficient to meet the Takings Clause requirements in these areas may be found in the case at bar. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (hereinafter *"Midkiff"*) goes about as far as any case in upholding the taking and invoked fear that under this decision many ends of government would be viewed as sufficiently public to meet the Takings Clause requirement. See Epstein, *Takings: Private Property and the Law of Eminent Domain* (1985) at 181. Even under the *Midkiff* decision, however, section 363(h) cannot be deemed to meet the "public use" requirement.

*Midkiff* was decided in response to a challenge brought against an Hawaiian statute designed to introduce a drastic change in the state's land ownership structure which was based primarily upon long term leases rather than fees simple absolute.

The people of Hawaii have attempted ... to reduce the perceived social and economic evils of a land oligopoly traceable to their monarchs. The land oligopoly has, according to the Hawaii Legislature, created artificial deterrents to the normal functioning of the State's residential land market and forced thousands of individual homeowners to lease, rather than buy, the land ... Regulating oligopoly and the evils associated with it is a classic exercise of a state's policy powers.

*Midkiff,* 467 U.S. at 241–42, 104 S.Ct. at 2329–30.

The unique factual background on which the *Midkiff* decision is grounded, accompanied with the court's heavy reliance on the state's police powers, clearly distinguishes that decision from the case at bar:

A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void. But no purely private taking is involved in these cases. The Hawaii Legislature enacted its Land Reform Act not to benefit a particular case of identifiable individuals but to attack certain perceived evils of concentrated property ownership in Hawaii—a legitimate public purpose.

*Id.* at 245, 104 S.Ct. at 2331.

Although congressional policy is often denominated public policy, the desires of Congress do not always meet constitutional constraints. Where the term "public policy" is used in place of the more accurate "Congressional policy", care must be taken to avoid the assumption that by substituting the word "public" for the word "congressional", a "public purpose" has thereby been established. Public policy is the legislative philosophy which Congress has decided to pursue. Where Congress chooses to implement such policy through a taking, "public use" still remains the constitutionally imposed test that the statute must meet. In applying this test we cannot stop with an examination only of the congressional statement of policy or intent found either in the legislative history or in the preamble to the statute, for to do so would bypass the traditional checks and balances and would arrogate unto Congress our judicial prerogative to make such determination. We must go further. We must shine the light of judicial scrutiny through the fabric of the statute and assure ourselves that the shadow cast thereby fits within the constitutional framework to which all statutes must conform.

It is well-settled law that the property taken need not actually be put to use for the general public in order to meet the public use requirement. *Ruckelshaus v. Monsanto,* 467 U.S. 986, 104 S.Ct. 2862,

81 L.Ed.2d 815 (1984) and cases cited therein. Furthermore, since "the public" is an aggregation of private interests and entities, it is clear that the Takings Clause is not violated merely because it benefits some and not all of the private interests comprising "the public" which the taking was intended to benefit. *Midkiff*, 467 U.S. 229, 104 S.Ct. 2321.

In *Courtesy Sandwich Shop v. Port of New York Authority*, 12 N.Y.2d 379, 240 N.Y.S.2d 1, 190 N.E.2d 402 (1963), *app. dism'd*, 375 U.S. 78, 84 S.Ct. 194, 11 L.Ed.2d 141 (1963), *reh. denied* 375 U.S. 960, 84 S.Ct. 440, 11 L.Ed.2d 318 (1963), the New York State Court of Appeals held constitutional a condemnation action taken under the World Trade Center project. The proposed project was defined in very broad terms: "a facility of commerce ... for the centralized accommodation of functions, activities and services for or incidental to the transportation of persons, the exchange, buying, selling and transportation of commodities." *Id.* at 388, 240 N.Y.S.2d 1, 190 N.E.2d 402. In upholding the constitutionality of the condemnations actions with respect to incidental purposes the court held: "We understand this [the World Trade Center concept] to mean that any use of the property sought to be condemned that is functionally related to the centralizing of all port business is unobjectionable even though private persons are to be the inchoate lessees. It is the gathering together of all business relating to the World Trade Center that is supposed ... to *attract trade with a resultant stimulus to the economic well-being* of the Port of New York." *Id.* at 388, 240 N.Y.S.2d 1, 190 N.E.2d 402 (emphasis added). The court also stressed the "cause and effect relationship between a great port and a great city." *Id.* at 389, 240 N.Y.S.2d 1, 190 N.E.2d 402.

In *Poletown Neighborhood Council v. Detroit*, 410 Mich. 616, 304 N.W.2d 455 (1981) the Supreme Court of Michigan upheld the constitutionality of condemnation proceedings on property designed to be turned over to the General Motors Corporation for construction of an assembly plant. "The power of eminent domain is to be used in this instance primarily to accomplish the essential public purposes of *alleviating unemployment and revitalizing the economic base of the community*. The benefit to a private interest is merely incidental." *Id.* at 634, 304 N.W.2d 455 (emphasis added). Furthermore:

"If the public benefit was not so clear and significant, we would hesitate sanction approval of such a project. The power of eminent domain is restricted for furthering public uses and purposes and is not to be exercised without substantial proof that the public is primarily to be benefitted ... *Such public benefit cannot be marginal or speculative but must be clear and significant*."

*Id.* at 634–35, 304 N.W.2d 455 (emphasis added).

It should be noted that even under the extreme economic circumstances surrounding this case, strong dissenting opinions were filed.

This is an extraordinary case ... This is more than an example of a hard case making bad law—it is, in the last analysis, good-faith but unwarranted judicial imprimatur upon government action taken under the policy of the end justifying the means.

*Id.* at 646, 304 N.W.2d 455.

After all is said and done, this court is faced with a policy decision. No clear-cut test of law is available. Precedent does not clearly prohibit either alternative. Considering, however, the extensive case law rendered under the Takings Clause; examining the factual basis on which cases were decided; and considering the legal pronouncements found in the case law; we conclude that application of section 363(h) to property rights which had matured and vested prior to its effective date, for a benefit limited only to this estate's creditors, would violate the "public use" requirement of the Takings Clause and thus would be unconstitutional. See, e.g., *Owen v. Owen*, — U.S. —, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) where the Court suggested that a Florida statute which extended the homestead exemption might raise a taking issue.

We view section 363(h) as a mechanism for redistribution of wealth, infringing on

the rights of third parties who are neither debtors nor creditors in favor of only creditors of the bankrupt's estate and feel that under the Takings Clause, such an action does not meet the "public use" requirement.

Furthermore, there is no legislative history to indicate that section 363(h) of the Bankruptcy Code was the result of congressionally-declared public policy. The legislative history indicates only that Congress attempted to simplify and unify the treatment given to marital property in bankruptcy. "Where only one spouse is involved in a bankruptcy case, there is *difficulty* in handling jointly owned property under the present act." *Commission Report*, p. 195, reprinted in *Collier*, appendix 2 (emphasis added). "Difficulties arise, however, under the existing act if only one spouse files a petition. Again, the outcome turns on the local law. The results are far from uniform." *Id.* With respect to the solution adopted it was stated that "[t]his approach should *eliminate a substantial amount of litigation* and the *unfairness possible* under the present Act." *Id.* at 196. (emphasis added). With respect to the effects of this proposal on the non-debtor spouse, the Committee stated that "the spouse who is not a debtor in a case under the proposed Act is sufficiently protected by the requirement that the net proceeds of the sale attributable to the spouse's interest ... be disbursed to the spouse." *Id.* See also, proposed section 4–601(c) and its accompanying notes. *Collier*, Appendix 2, pp. 147–8. House Report No. 95–595 stated, in reliance on the *Commission Report*, that "[c]urrent law is a complicated melange of references to State law, and does little to further the bankruptcy policy of distribution of the debtor's property to his creditors in satisfaction of his debts." H.R. No. 95–595, *reprinted in Collier*, Appendix 2, p. 175.

The legislative history makes no reference to the constitutional problems created by section 363(h). The "public use" requirement is not mentioned at all. Congress clearly meant to introduce a uniform treatment for concurrent ownerships in order to minimize the disparity of treatment from state to state. However, since Congress did not consider the constraints of the Takings Clause, it cannot be said that Congress viewed section 363(h) as an issue of compelling public policy which should take precedent over the Takings Clause.[6]

■ Nor are the conclusions either with regard to the Bankruptcy Clause or the Takings Clause altered by the "necessary and proper" clause. *U.S. Const., Art. I, § 8, Cl. 18.* As a matter of construction, the general nature of this clause must bow to the limitations imposed by the more specific provisions of both the Bankruptcy Clause and the Takings Clause. *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *In re Gusam Restaurant Corp.*, 737 F.2d 274 (2d Cir.1984). Furthermore, the necessary and proper clause may only be used to justify action otherwise within the grant of the Bankruptcy Clause; it may not be used as an independent source of power for an action which is clearly beyond the Bankruptcy Clause itself. Allowing Congress to act under the necessary and proper clause in the absence of a specific grant of power would render unnecessary any of the specific powers granted to that legislature and would result in the type of unlimited and uncontrollable congressional power that the constitution was designed to prevent. See, generally, *Tribe, supra* at 300–305.

## CONCLUSIONS

(1) The law of the case doctrine does not bar this court from ruling on defendants' second motion to dismiss.

---

**6.** In *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), the Supreme Court upheld the constitutionality of a provision of the Internal Revenue Code similar to section 363(h) of the Bankruptcy Code. Here, as well, we find *United States v. Rodgers* inopposite. First, since the section considered in *Rodgers* dates back to 1868, no issue of retroactivity

could now arise. Second, the power granted to the Internal Revenue Service to force a sale of all property interests was "not the act of an ordinary creditor, but the exercise of a sovereign prerogative", *Id.* at 697, 103 S.Ct. at 2144, "to lay and collect taxes;" thereby satisfying the public use requirement of the Takings Clause.

(2) Neither ownership nor survivorship interests in New York entireties property are "undivided interest" sufficient to invoke section 363(h) of the Bankruptcy Code.

(3) While the usufruct interest in New York entireties property is an "undivided interest", such limited property right is not sufficient to invoke section 363(h).

(4) Section 363(h) application to the non-debtor spouses in this case would be in derogation of vested property rights of one outside of the debtor-creditor relationships.

(5) Retroactive application of section 363(h) violates the Takings Clause of the Fifth Amendment.

(6) Application of section 363(h) to the facts of the case at bar is beyond the scope of power granted to Congress in the Bankruptcy Clause and could not be supported by the necessary and proper clause.

### FINAL DISPOSITION

Defendants' motion to dismiss plaintiff's complaint seeking an order pursuant to 11 U.S.C. § 363(h) directing a sale of both debtors' and their spouses' interests in the entireties properties is granted.